## J. L. PRESCOTT CO. v. GENUINE SOLVENT CORPORATION et al.
### No. 7172.

District Court, E. D. New York.

Feb. 5, 1934.

Putney, Twombly & Hall, of New York City (Louis H. Hall, Lemuel Skidmore, and Frederic R. Sanborn, all of New York City, of counsel), for plaintiff.

Plosky & Levine, of New York City, for defendants.

INCH, District Judge.

On January 18, 1934, the plaintiff filed in this court its bill of complaint based upon alleged unfair competition and violation of trade-marks.

On January 20, 1934, it likewise filed the present motion, served January 18, 1934, for an injunction pendente lite, a form of relief contemplated in the complaint.

The relief asked for on this motion is substantially the same as would be granted after a trial.

On January 31, 1934, the defendants filed a joint answer verified by Jacob Nekritz individually and as president.

The important fact therefore is that, while a trial would have testimony presented, this motion is based upon affidavits.

Unless, therefore, a clear case is presented by these affidavits so as to indicate the plain necessity for, and propriety of, the granting of this immediate relief in advance of the trial, the court prefers to leave the issues to such trial, especially where such trial may be reasonably reached on the calendar.

The question accordingly presented is whether the affidavits of plaintiff and the opposing affidavits of defendant present such a clear case. Due weight must be given to complaint and verified answer.

This question may be subdivided into consideration of the merchandise sold by plaintiff under its trade-marks and the question of whether all or any of the defendants should be enjoined.

The plaintiff is a New Jersey corporation engaged in the manufacture and sale of stove polish manufactured by it both as a liquid and as a paste. There are four defendants. The corporate defendant is a New York corporation, carrying on business in this district. The individual defendants are Jacob Nekritz, Pauline Nekritz, his wife, and Robert Goldberg, each alleged to be citizens and resi-

162

dents of the state of New York and residing in this district.

The trade-marks of plaintiff are those duly registered in the United States Patent Office.

Thus jurisdiction sufficiently appears on the face of the complaint.

Plaintiff manufactures and sells a liquid stove polish under the trade-mark "Dazzle." It has done so for a long time both under its present name and under the name of a co-partnership to which it succeeded. For practically the same time it has manufactured and sold a stove polish paste under the trade-mark "Vulcanol." The paper wrappers used by plaintiff and placed around the cans of its respective products contain, besides its trademark, the direction for use and a general advertising of the merits of that product.

The plaintiff alleges that its sales approximate $150,000 a year and that it has expended in advertising over $250,000. It also claims that the market for its products is being damaged by these alleged acts of the defendant in unfairly competing therein with plaintiff by manufacturing and selling the stove polish, liquid, and paste, complained of by plaintiff, which is alleged to be inflammable and dangerous, while that of plaintiff's is noninflammable and safe, as well as being of a quality inferior to that of plaintiff's product and in plain violation of the trade-marks of plaintiff.

■ In deciding this matter, the court may consider the appearance to the ordinary eye of these wrappers of plaintiff as well as those complained of by it, and this includes the arrangement, colors, and appearance in general.

The plaintiff then complains both in its complaint and in the moving papers that defendants are manufacturing and selling a liquid stove polish under the name of "Dazzie," and sets forth a copy of the wrapper used.

■ There is no indication of any trademark on this wrapper; on the contrary, it is a plain attempt to imitate the wrapper of plaintiff under its trade-mark "Dazzle" and to a sufficient extent to confuse an ordinary person. It is plainly used not only as a violation of the plaintiff's trade-mark but in unfair competition with plaintiff.

I need not spend much time over this particular wrapper.

The second offending wrapper complained of by plaintiff is one setting forth the name "Daisy."

This is not such a bald attempt to compete with plaintiff as that of "Dazzie."

Passing now to the paste product, plaintiff's wrapper, about an inch in width, is used to surround a can a little deeper, and the wrapper sets forth its trade-mark "Vulcanol" in large letters in yellow against dark blue, while the wrapper of defendants, complained of by plaintiff, sets forth the word "Victory" in yellow against black but of the same general width and description.

Plaintiff thus complains of the two wrappers "Dazzie" and "Daisy" as to its liquid polish and the wrapper "Victory" as to its paste polish.

■ While, as I have stated, I can see no doubt whatever about the word "Dazzie" as compared with the word "Dazzle," I am not so certain about the mere word "Daisy," and this same lack of certainty arises in the case of the word "Vulcanol" as against "Victory."

However, even if such difference may exist in the use of the names "Daisy" and "Victory," this otherwise possible difference would yield to sworn testimony on the trial, with its cross-examination, as to just why "Daisy" and "Victory" were selected, and when, together with many other things that may be suggested as to their use, form of wrapper, etc.

Plaintiff alleges, and the wrappers, made part of its affidavits, show, that the "Dazzie" product is claimed to be manufactured by Dazzie Prod. Co., of N. Y., and the "Daisy" product is manufactured by Daisy Mfg. Co., Brooklyn, N. Y., and the Victory product is manufactured by the Victory Prod. Co., N. Y., and further alleges, and submits affidavits to the effect, that none of these alleged manufacturers exists or can be found after search.

However, Jacob Nekritz, in his affidavit, swears that he succeeded to the business of one Jacob Davis; that said Davis owned a trade-mark No. 149,027 for the use of the word "Daisy" which was duly registered December 6, 1921.

It also appears that the tin containers for the polish manufactured by Nekritz were sold to him by plaintiff.

There are other matters which may arise on the trial and which, perhaps unimportant in themselves, nevertheless suggest that this issue as to the labels "Daisy" and "Victory" be best presented at a trial.

The effort of the federal court, under the present rules, is to have testimony presented orally rather than by deposition or affidavit.

Under the circumstances this is the course that should be followed here as to the use, etc., of these two labels.

Consequently, this court refrains from commenting further on this subject and in no way indicates any opinion on the merits.

There still remains the question of the defendants to be charged with violation of its trade-mark "Dazzle" and unfair competition, if any, in regard to "Dazzie."

I am satisfied that the defendant Pauline Nekritz is not shown by the papers before me to have participated in such manner as to render herself liable to a temporary injunction. The facts at the trial may be different, but for the present the motion must be entirely denied as to her.

As to the corporate defendant, Genuine Solvent Corporation, this is nothing more or less than Jacob Nekritz, although perhaps the entity of the corporation is preserved. Everything that Jacob Nekritz did, individually or as president of this defendant, is sufficient to indicate an equal liability on the part of this corporate defendant.

There remain the defendants Jacob Nekritz and Robert Goldberg. Sufficient facts are shown as to Goldberg to warrant the finding that he is constantly selling the products of Nekritz and that his truck was so used and carries the name of the defendant Genuine Solvent. Corporation.

There is evidence that defendants' polishes have been sold by a peddler; that for several days this truck of Goldberg's was watched and seen loading up at Nekritz' place and returning for other loads.

All the defendants disclaim any connection with this product "Dazzie"; nevertheless, it is not denied that a witness for plaintiff found, on the premises of Nekritz and the Genuine Solvent Corporation, cans of "Dazzie."

This Nekritz was not a retailer or customer. He and his corporation are manufacturers and distributors. Nekritz, in his affidavit, disclaims any interest in the manufacture, sale, and distribution of "Dazzie." Just what these cans of "Dazzie" were doing there is not explained by the affidavits of defendants. I understood counsel, on the argument, to state that they were only "returns." Still I do not see why they should be returned to Nekritz if he had nothing to do with them.

Nekritz claims that a man named M. Geiger had the sole right to manufacture and sell "Dazzie." Who Geiger is does not appear, and how Nekritz knows this is left in doubt. At the same time the said Nekritz, in his affidavit, as president of the defendant Genuine Solvent Corporation, mentions one Moe Geiger in regard to the product "Daisy" as to which Nekritz claims the sole right and which he admits manufacturing and selling.

I am satisfied that sufficient appears here in regard to this product "Dazzie" to justify a preliminary injunction. I am satisfied that these three defendants Genuine Solvent Corporation, Jacob Nekritz, and Robert Goldberg have been interested in some way, at some time, in manufacturing, selling, and distributing "Dazzie."

If they are doing this at the present, they should be stopped. If they have discontinued such practice, the injunction will do them no harm.

Accordingly, the motion is granted against the defendants indicated as to the product "Dazzie." It is denied as to the other products without prejudice to a trial of the issues.